UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-61213-CIV-DIMITROULEAS

PHILIP HALL and DEBORAH HAASE, on
behalf of themselves and all others similarly
situated,

       Plaintiffs,

vs.

OMEGA FLEX, INC.,

       Defendant.
_____/

## ORDER GRANTING MOTION TO DISMISS

THIS CAUSE is before the Court upon Defendant's Motion to Dismiss Plaintiffs' Amended Class Action Complaint (the "Motion") [DE 20], filed herein on September 6, 2013. The Court has carefully considered the Motion [DE 20], the Response [DE 24], the Reply [DE 33], the parties' arguments at the November 13, 2013, hearing, and the Notice of Supplemental Authority [DE 36]. The Court is otherwise fully advised in the premises.

### I.    BACKGROUND

The parties to this action are Plaintiffs Philip G. Hall and Deborah P. Haase ("Plaintiffs") and Defendant Omega Flex ("Omega" or "Defendant"), a Pennsylvania corporation. Defendant manufactured, distributed, and supplied TracPipe, one brand of corrugated stainless steel tubing ("CSST"), throughout the United States, including in Florida. [DE 13 ¶ 1]. Plaintiffs, both Florida residents, had TracPipe installed in their homes. [*Id.* ¶¶ 10-11, 69-76].

CSST is an ultrathin, flexible piping used to transport natural and propane gas within both residential and commercial structures. [*Id.* ¶ 2]. It was developed as an alternative to the

1

much thicker, more durable black iron pipe that has been used to transport gas within residential and commercial structures for more than a century.  [*Id.*].  However, when exposed to direct or nearby lightning strikes, CSST can cause and has caused fires through ignition of the gas being transported.  [*Id.* ¶¶ 3-7, 32-42].  This risk exists even if the CSST is properly installed and bonded.  [*Id.* ¶¶ 36-37].  As of August 2011, 141 fires involving lightning and CSST have been reported throughout the United States.  [*Id.* ¶ 42].

In 1997, Defendant introduced TracPipe as "the finest CSST system on the market that when properly installed makes likelihood of damage to the system from natural occurrences very small."  [*Id.* ¶ 45].  Defendant has known since October 2002 that TracPipe fails when subjected to an electrical charge from a direct or indirect lightning strike.  [*Id.* ¶¶ 50-56].  In 2004, Defendant developed CounterStrike, a CSST system containing all of the features of TracPipe plus a plastic jacket to protect it from lightning damage.  [*Id.* ¶ 46].  In 2007, Defendant introduced a second generation of CounterStrike, which is purportedly 400 times more resistant than conventional CSST to the damaging effects of electrical energy and 6 times more resistant than the first generation of CounterStrike.  [*Id.* ¶ 47].  As of September 1, 2011, Defendant has transitioned its traditional CSST products exclusively to CounterStrike.  [*Id.* ¶ 48].  Defendant has been involved in a variety of litigation connected to TracPipe.  [*Id.* ¶¶ 64-68].

On June 3, 2013, Plaintiffs initiated this class action, generally alleging that TracPipe is defective, should never have been sold, and needs to be removed and replaced from all structures.  [*Id.* ¶ 12].  Plaintiffs seek to represent a purported Class consisting of "[a]ll persons or entities in the State of Florida who purchased a house, or other structure, in which Omega Flex's TracPipe is installed after September 5, 2006, or who, after September 5, 2006, purchased a house, or other structure, in which Omega Flex's TracPipe® was installed prior to September

5, 2006." [*Id*. ¶ 77].  Plaintiffs, on behalf of themselves and this purported Class, bring the following causes of action: Count I for Strict Liability – Design and Manufacturing Defect; Count II for Negligence – Design Defect and Failure to Test; Count III for Negligence – Failure to Warn; Count IV for Violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"); Count V for Breach of Implied Warranty of Fitness for a Particular Purpose; and Declaratory Relief.  [*Id*. ¶¶ 83-145].

## II.   DISCUSSION

### A.   Standard of Review

#### 1.   Subject Matter Jurisdiction

As a threshold matter, the Court must determine if jurisdiction exists before proceeding to the merits of the case.  *Sinochem Int'l Co. v. Malay Int'l Shipping Corp*, 127 S. Ct. 1184, 1191 (2007) ("Without jurisdiction the court cannot proceed at all in any cause; it may not assume jurisdiction for the purposes of deciding the merits of the case." (internal quotations omitted)). "The burden for establishing federal subject matter jurisdiction rests with the party bringing the claim."  *Sweet Pea Marine, Ltd. v. APJ Marine, Inc*., 411 F.3d 1242, 1247 (11th Cir. 2005).

"Federal courts cannot exercise jurisdiction over cases where the parties lack standing." *Fla. Wildlife Fed'n, Inc. v. S. Fla. Water Mgmt. Dist*., 647 F.3d 1296, 1302 (11th Cir. 2011). This principle exists because there is "a constitutional limitation of federal-court jurisdiction to actual cases or controversies" and "[o]ne element of the case-or-controversy requirement is that plaintiffs must establish that they have standing to sue."  *Clapper v. Amnesty Intern. USA*, 133 S.Ct. 1138, 1146 (2013) (internal citations and quotations omitted).  To establish standing, "a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the

challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Fla. Wildlife Fed'n, Inc.*, 647 F.3d at 1302 (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–181 (2000)). "If at any point in the litigation the plaintiff ceases to meet all three requirements for constitutional standing, the case no longer presents a live case or controversy, and the federal court must dismiss the case for lack of subject matter jurisdiction." *Id.*

### 2. Failure to State a Claim

To adequately plead a claim for relief, Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss should be granted only if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating *Conley*, 355 U.S. at 41). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). The allegations of the claim must be taken as true and must be read to include any theory on which the plaintiff may recover. *See Linder v. Portocarrero*, 963 F. 2d 332, 334-36 (11th Cir. 1992) (citing *Robertson v. Johnston*, 376 F. 2d 43 (5th Cir. 1967)).

However, the court need not take allegations as true if they are merely "threadbare recitals of a cause of action's elements, supported by mere conclusory statements . . . ." *Iqbal*, 129 S. Ct. at 1949. In sum, "a district court weighing a motion to dismiss asks 'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support

the claims.'" *Twombly*, 550 U.S. at n. 8 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds, Davis v. Scherer*, 468 U.S. 183 (1984)).

**B.     Analysis**

Defendant asserts five arguments in favor of dismissal.  First, Defendant argues that Plaintiffs lack standing to assert all claims because Plaintiffs have failed to allege any injury in fact.  Second, Defendant argues that Plaintiffs have failed to state any claim because they have not alleged that TracPipe caused any injury or specific damages.  Third, Defendant argues that the economic loss rule bars Plaintiffs' tort claims.  Fourth, Defendant argues that Plaintiffs have failed to allege the elements of a FDUTPA claim.  Fifth, Defendant argues that Plaintiffs' implied warranty claim fails because Plaintiffs lack privity with Defendant and Plaintiffs have failed to provide the requisite notice.  For the following reasons, the Court finds that Plaintiffs lack standing.  Accordingly, the Court lacks subject matter jurisdiction and will not consider Defendants' other arguments for dismissal.  *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999) ("[O]nce a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue . . . .  Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." (internal citations and quotations omitted)).

Plaintiffs have not adequately alleged the existence of any concrete and particularized injury in fact that is actual or imminent.  Plaintiffs have not alleged that their TracPipe has malfunctioned, started a fire, caused any damage to persons or property, or otherwise failed to perform its intended function of transporting natural and propane gas.  Nor have Plaintiffs alleged that they have incurred costs to repair or replace the TracPipe in their homes.  Rather, Plaintiffs' claims arise from allegations that "[t]he presence of TracPipe in Plaintiffs and Class

5

Members' structures creates an unreasonable risk of fire due to lightning strikes." [DE 13 ¶ 9]. Thus, Plaintiffs' purported injury is comprised of an increased risk of injury, as opposed to a concrete injury that Plaintiffs have, in fact, incurred as a result of owning and utilizing TracPipe. That purported injury is more speculative than imminent and, therefore, is insufficient to create standing. *See Clapper*, 133 S. Ct. 1138, 1147 ("Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is certainly impending. Thus, we have repeatedly reiterated that threatened injury must be *certainly impending* to constitute injury in fact, and that [a]llegations of possible future injury are not sufficient." (internal citations and quotations omitted)).

Plaintiff, nonetheless, argue that they have standing based on the risk of injury posed by TracPipe. In support, Plaintiffs rely on *Bouldry v. C.R. Bard, Inc*., 909 F. Supp. 2d 1371 (S.D. Fla. 2012) and *Pulte Homes Corp., Inc. v. Ply Gem Indus., Inc*., 804 F. Supp. 1471 (M.D. Fla. 1992) ("*Pulte*"). In *Bouldry*, the court—after noting that the Eleventh Circuit has not addressed whether risk of future injury confers standing—held that the plaintiffs had standing where allegedly defective medical devices had been implanted in their bodies. *Bouldry*, 909 F. Supp. 2d at 1374-77. The court stated that "[a] defective medical device embedded in an individual's body poses a serious threat to that individual's health" and that "[u]nder such circumstances, the damage has been done" even though the parties "cannot yet quantify how it will manifest itself." *Id.* at 1376 (internal citations and quotations omitted).

In *Pulte*, the plaintiff, a builder of residential housing units, manufactured multiple units using a type of plywood supplied by the defendants. *Pulte*, 804 F. Supp. at 1477. After discovering that the plywood was defective, the plaintiff brought various causes of action against

6

the defendants. *Id.* The court concluded that plaintiff had suffered an injury in fact because the defective plywood had exposed the plaintiff to the cost of remedial efforts and to the threat of lawsuits by injured homeowners. *Id.* at 1480-81.

The Court finds those cases to be distinguishable from the instant facts. In the context of medical monitoring cases such as *Bouldry*, the plaintiffs have suffered injury, at a minimum, in terms of the costs of medical care to monitor or detect the onset of physical harm. *See Bouldry*, 909 F. Supp. 2d at 1376 ("Even if physical harm has not yet arisen, '[t]he injury in a medical monitoring case is defined as the quantifiable costs of periodic medical examinations necessary to detect the onset of physical harm.'" (quoting *Wyeth, Inc. v. Gottlieb*, 930 So. 2d 635, 640 (Fla. 3d DCA 2006)). In *Pulte,* the plaintiff had suffered harm because the plywood at issue had proven defective and had required plaintiff to incur costs to remediate the defects.

Here, however, Plaintiffs have not suffered any such injuries. Their products have not failed to perform the function of transporting gas, have not started fires or otherwise damaged Plaintiffs' homes, and have not manifested any other defects. Rather, Plaintiffs allege that the TracPipe *may* cause injury under certain circumstances. *See* [DE 13 ¶¶ 32-35]. But Plaintiffs do not—and cannot—allege that the threatened injury from TracPipe is certainly impending.[1] Nor

---

[1] Indeed, according to Plaintiffs, "[t]o date, over 750 million feet of CSST has been installed in over 5 million homes across the United States," and "[a]s of August 2011, 141 fires involving lightning and CSST have been reported throughout the United States." [DE 13 ¶¶ 31, 42]. In light of these numbers, the Court cannot conclude that it is certainly imminent that a house with TracPipe or any other CSST will experience a CSST-related fire. *See* Memorandum and Order Regarding Defendant's Motion to Dismiss, *Kerin v. Titeflex Corporation t/a Gastite*, No. 13-CV-30141-MAP (D. Mass. Jan. 7, 2014), ECF No. 18 ("The capriciousness of a lightning strike is the stuff of folklore. The possibility of some negative consequences arising from this genus of caprice is so speculative that it simply cannot provide a foundation for a claim in federal court that satisfies the requirements for Article III standing.").

do Plaintiffs allege facts showing that they have incurred damages in terms of costs to repair or replace TracPipe due to the purported defects or dangers.[2]

Consequently, Plaintiffs have not shown that they have suffered an injury in fact. Plaintiffs, therefore, lack standing, and the Court lacks subject matter jurisdiction.

### III.    CONCLUSION

1. The Motion [DE 20] is hereby **GRANTED**;

2. This action is **DISMISSED WITHOUT PREJUDICE**[3] for lack of subject matter jurisdiction; and

3. The Clerk is directed to **CLOSE** this case and **DENY** any pending motions as moot.

**DONE AND ORDERED** in Chambers at Ft. Lauderdale, Broward County, Florida, this 17th day of January, 2014.

*[signature]*
WILLIAM P. DIMITROULEAS
United States District Judge

Copies provided to:

Counsel of record

---

[2] The Court acknowledges Plaintiffs' allegation that "[w]hile Plaintiff[s] and the Class are forced to repair and/or replace TracPipe®, they have neither been reimbursed for nor advanced the costs associated with this undertaking." [DE 13 ¶¶ 72, 76]. This allegation suggests that some members of the purported class may have repaired or replaced their TracPipe but does not specify that the two current Plaintiffs have done so. There are no factual details as to the scope, date, or cost of any such repairs or replacements undertaken by Plaintiffs. Accordingly, the Court does not take any position on the hypothetical issue of whether a plaintiff who repaired/replaced a properly functioning TracPipe would have standing.

[3] A dismissal for lack of subject matter jurisdiction should be without prejudice because the Court has no power to render a judgment on the merits. *See Crotwell v. Hockman-Lewis Ltd.*, 734 F.2d 767, 769 (11th Cir. 1984); *Georgia Advocacy Office, Inc. v. Camp*, 172 F.3d 1294, 1299 (11th Cir. 1999).